UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                    :

**ZHI YE**,

                             Petitioner,

               – against –

**RAUL MALDONADO, JR., in his official
capacity as Warden of the Metropolitan
Detention Center; JUDITH ALMODOVAR,
in her official capacity as Acting Director of
the New York City Field Office of
Immigration and Customs Enforcement;
KRISTI NOEM in her official capacity as
Secretary of Homeland Security; PAM
BONDI, in her official capacity as Attorney
General**,

                           Respondents.
------------------------------------------------------------- X

**MEMORANDUM DECISION
AND ORDER**

25-CV-6417 (AMD)

**ANN M. DONNELLY**, United States District Judge:

       On November 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the petitioner, Zhi Ye, when he reported for a check-in appointment with ICE. (ECF

No. 1 ¶ 2; ECF No. 8-1 ¶ 9.) On November 11, 2025, the petitioner was transferred to the

Metropolitan Detention Center ("MDC") in Brooklyn, where he remains detained. (ECF No. 1

¶ 2; ECF No. 1-6 at 1; ECF No. 8-1 ¶ 11.) The petitioner seeks a writ of habeas corpus, pursuant

to 28 U.S.C. § 2241. (ECF No. 1 at 11.) For the reasons that follow, his petition for a writ of

habeas corpus is granted.

# BACKGROUND[1]

The petitioner, a Chinese national, arrived in the United States after fleeing religious persecution by the Chinese government because of his Christian beliefs.  (ECF No. 1 ¶ 13; ECF No. 1-4 at 12–13.)

## I.  Factual Background

### a.  Arrival in the United States and Release on Own Recognizance

On December 17, 2023, the petitioner entered the United States, crossing the United States-Mexico border at or near the town of Tecate, California.  (ECF No. 1 ¶ 13; ECF No. 1-3 at 1; ECF No. 8 at 12; ECF No. 8-1 ¶ 3.)  Customs and Border Protection ("CBP") agents briefly detained him after he entered the country.  (ECF No. 1 ¶ 13; ECF No. 8 at 12–13; ECF No. 8-1 ¶ 3.)  According to the government, the petitioner informed the agents that he was a Chinese national, that he lacked the necessary legal documents to enter the United States, and that "he had illegally crossed the international border without being inspected by an immigration officer at a designated port of entry."  (ECF No. 8 at 13; ECF No. 8-1 ¶ 3.)  The same day, CBP issued the petitioner a Form I-862 Notice to Appear ("NTA").  (ECF No. 1-3 at 1; ECF No. 8 at 13; ECF No. 8-1 ¶ 4.)  The NTA states that the petitioner is "an alien present in the United States without being admitted or paroled" and that the petitioner is subject to removal pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act.  (ECF No. 1-3 at 1.)  The NTA

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits.  *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing.  *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

instructed the petitioner to appear for removal proceedings before an immigration judge in New York, New York on October 23, 2024. (*Id.*) Invoking its authority pursuant to Section 1226, CBP then released the petitioner on his own recognizance pending this appearance, with certain conditions. (ECF No. 1 ¶ 13; ECF No. 1-5 at 1; ECF No. 8 at 13; ECF No. 8-1 ¶ 5.) In the almost two years since his release, the petitioner has worked as a laborer. (ECF No. 14-2 at 1.) The parties agree that he has no criminal record and has complied with all the terms of his release, including reporting to the Department of Homeland Security whenever he was told to do so. (ECF No. 1 ¶¶ 1, 8.)

### b. Asylum Application

On April 17, 2024, the petitioner applied for asylum and requested that removal be withheld. (ECF No. 1-4; ECF No. 8 at 13; ECF No. 8-1 ¶ 7.) On October 17, 2024, six days before the petitioner's scheduled removal proceeding, he received a notice scheduling an individual hearing before the immigration court on December 7, 2027. (ECF No. 1-7 at 1.)[2]

### c. Re-Arrest in New York City

On October 21, 2025, ICE informed the petitioner that he was required to appear for an in-person check-in on November 8, 2025 at 26 Federal Plaza in Manhattan. (ECF No. 8 at 13; ECF No. 8-1 ¶ 8.) The government maintains that ICE cancelled the order of release on recognizance and arrested the petitioner at this check-in "pursuant to . . . 8 U.S.C. § 1225(b)(2)(A)." (ECF No. 8 at 8, 13; ECF No. 8-1 ¶¶ 9–10.)[3] The Form I-213 (Record of

---

[2] It is not clear whether the October 23, 2024 removal hearing took place.

[3] The petitioner asserted in his petition that he was arrested on November 11, 2025 (ECF No. 1 ¶¶ 2, 14), possibly because the Form I-830 stated that the petitioner was "[d]etained by ICE and transferred on 11/11/2025," (ECF No. 1-6 at 1). The government has since filed the arrest warrant (Form I-200) and certain underlying records, which show that he was arrested on November 8, 2025. (ECF No. 14-1 at 1.)

Deportable/Inadmissible Alien) says that the petitioner "is in removal proceedings," and "[a]fter a review of all relevant information, the release on the Order of Recognizance was canceled following appropriate procedures." (ECF No. 14-2 at 2.) At some point, agents prepared a form arrest warrant, signed by an immigration officer. (ECF No. 14-1 at 1.)[4] As noted above, the government appears to concede that the petitioner was fully compliant with the terms of his release. The government does not provide any justification for the arrest, and the only explanation anywhere in the record appears in an ICE form related to the arrest, which says that the petitioner is "subject to be re-detained now that bedspace is available." (ECF No. 14-2 at 3.) ICE transferred the petitioner to the MDC — a detention facility that courts in this district have described as "dangerous," "barbaric," and "inhumane"[5] — on November 11, 2025. (ECF No. 1 ¶ 14; ECF No. 1-6 at 1; ECF No. 8-1 ¶ 13.) It is undisputed that the petitioner was not given any prior notice or warning that he was going to be re-arrested, nor any individualized explanation for his arrest or detention or opportunity to be heard.

## II. Procedural History

The petitioner filed this petition for a writ of habeas corpus on November 19, 2025. (ECF No. 1.) On November 24, 2025, the Court issued an Order to Show Cause directing the government to show cause why a writ of habeas corpus should not be issued.[6] On December 3,

---

[4] There is no information in the record about when and under what circumstances the arrest warrant was prepared. Under the INA implementing regulations, certain immigration officers can issue arrest warrants without judicial oversight. *See* 8 C.F.R. §§ 236.1(b)(1), 1236.1(b)(1); 8 C.F.R. § 287.5(e)(2) (listing "authorized officers").

[5] *See, e.g.*, *United States v. Colucci*, 743 F. Supp. 3d 452, 454–60 (E.D.N.Y. 2024) (describing "dangerous, barbaric conditions" in the MDC, where "[c]haos reigns, along with uncontrolled violence," including "two apparent homicides, two gruesome stabbings and an assault so severe that it resulted in a fractured eye socket for the victim").

[6] The Court originally directed the government to show cause by 6:00 p.m. on November 28, 2025, but granted its application for an extension of time to reply. (*ECF Orders dated Nov. 24, 2025.*)

2025, the government filed its opposition to the petition and response to the Court's Order to Show Cause (ECF No. 8), along with a declaration by Deportation Officer Mincheol So (ECF No. 8-1). The petitioner replied on December 4, 2025. (ECF No. 9.) On December 5, 2025, the Court ordered the government to produce the ICE records to which it referred in its filing by 3:00 p.m. the same day. (*ECF Order dated Dec. 5, 2025.*) Instead, the government filed a letter in which it notified the Court of two recent decisions in this circuit that support its position. (ECF No. 10.)[7] The government asked for an extension to respond to the Court's order (ECF No. 12), which the Court granted in part (*ECF Order dated Dec. 5, 2025*). The government filed certain underlying records on December 6, 2025. (ECF Nos. 14, 15.)

## LEGAL STANDARD

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

---

[7] To the Court's knowledge, the courts in these cases — *Candido v. Bondi*, No. 25-CV-867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025) and *Chen v. Almodovar*, 25-CV-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) — appear to be the only courts in this circuit that agree with the government's interpretation of the statutory provisions that authorize the government to detain noncitizens in the course of immigration proceedings. As explained below, every other court in this circuit to have considered the issue has rejected the government's arguments.

**DISCUSSION**

In seeking a writ of habeas corpus, the petitioner alleges that the government violated his procedural due process rights under the Fifth Amendment, as well as Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a).

## I. The Petitioner Is Detained Under 8 U.S.C. § 1226

The issue before the Court is which of two statutory sections apply to the petitioner's detention. Depending on the answer, the petitioner is or is not subject to mandatory detention pending removal proceedings. The first, the one the government says applies, is 8 U.S.C. § 1225, which provides that "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted . . . shall be detained." The second is 8 U.S.C. § 1226, which the petitioner says applies. That section "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," including noncitizens "who" — "[e]ven once inside the United States" — "were inadmissible at the time of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Under Section 1225, a noncitizen must be detained, except that the government may parole him for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Under Section 1226, detention is discretionary; a noncitizen who is detained may request a bond hearing before an immigration judge. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019).

The government asserts that the petitioner was arrested "pursuant to . . . 8 U.S.C. § 1225(b)(2)(A)" and "falls within the ambit § 1225(b)(2)'s mandatory detention requirement," which does not require a hearing. (ECF No. 8 at 8, 16–17.) The government's theory is that the

petitioner "has not yet been admitted" and is both "an applicant for admission" and "seeking admission." Therefore, he must be detained under Section 1225(b)(2). (*Id.* at 16–20.)

The petitioner responds that Section 1225 applies only to noncitizens at the border who are "seeking admission" into the country. (ECF No. 1 ¶¶ 19–22; ECF No. 9 at 1–7.) The petitioner says that he is not "seeking admission" into the country; he is already in the country, awaiting the outcome of his asylum application and the pending removal proceedings. (ECF No. 1 ¶¶ 30–31; ECF No. 9 at 5–7.) For these reasons, the petitioner argues, the applicable section is Section 1226, which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." (ECF No. 9 at 5 (quoting *Jennings*, 583 U.S. at 289).)

The petitioner is the latest of hundreds of noncitizens who have been detained this year pursuant to the government's new Section 1225 theory,[8] and who have sought emergency relief from the courts. Courts who have considered these applications have overwhelmingly rejected the government's new interpretation of the INA.[9] The Court is persuaded by the cogent

---

[8] According to a July 2025 internal ICE memorandum, the government recently "revisited" its position about which statute applies, and has now "determined that [Section 1225] of the [INA], rather than [Section 1226] is the applicable immigration detention authority for all applicants for admission." *Savane v. Francis*, No. 25-CV-6666, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025).

[9] "By a recent count, the central issue in this case — the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed — has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." *Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025); *see also id.* at *4 n.22 (collecting cases). According to a recent article, "[a]t least 225 judges . . . in more than 700 cases" have rejected the government's argument, and "[t]he number of judges opposing the administration's position has more than doubled in less than a month." Kyle Cheney, *More than 220 judges have now rejected the Trump admin's mass detention policy*, Politico (Nov. 28, 2025), https://www.politico.com/news/2025/11/28/trump-detention-deportation-policy-00669861. "In contrast, only eight judges nationwide . . . have sided with the administration's new mass detention policy." *Id.*

reasoning of those courts, and concludes that the government's interpretation of the INA is inconsistent with the text, statutory scheme, and binding precedent, as well as with ICE's own records in this case, all of which make it clear 8 U.S.C. § 1226 applies. However, even if the Court found the government's reasoning persuasive, the outcome would not be different.

The parties agree that the petitioner is an "applicant for admission," but disagree on whether he is "seeking admission" to the country. The government argues that even though the petitioner has been in the country for nearly two years, he is "subject to mandatory detention for the duration of [his] immigration proceedings" pursuant to Section 1225(b)(2) because he "entered the United States without admission or inspection and ha[s] been residing in the country for years without lawful status" and is therefore still "seeking admission." (ECF No. 8 at 20 (citation omitted).) The petitioner, on the other hand, maintains that he is not "seeking admission" to the country because he is already here; the government detained him briefly in the United States after he had already entered, and then, pursuant to Section 1226, released him on his own recognizance pending removal proceedings. (ECF No. 1 ¶ 13; ECF No. 9 at 1–7.)

As Judge Komitee and Judge Gonzalez recently observed in *Sarmiento Guerrero v. Noem*, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025) and *O.F.B. v. Maldonado*, No. 25-CV-6336, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025), the government's interpretation is inconsistent with (1) canons of statutory interpretation and (2) recent binding precedent. *See also J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); *Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025).[10]

---

[10] As noted earlier, on December 5, 2025, the government alerted the Court to two recent decisions in this circuit that adopted the government's reasoning. (ECF No. 10 at 1 (citing *Candido*, 2025 WL 3484932, at *2–4 (holding that the terms "applicant for admission" and one "seeking admission" "are

Section 1225(b)(2)(a), which the government cites as the basis for detaining the petitioner, reads:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

If the government's interpretation were correct, the Court would have to conclude that "applicant for admission" and an individual "seeking admission" "mean the same thing in the same provision." *Sarmiento Guerrero*, 2025 WL 3214787, at *3; *see also Tumba Huamani*, 2025 WL 3079014, at *3–5 ("[F]ollowing the cardinal rule of statutory interpretation that 'every clause and word of a statute should have meaning,' . . . '[i]f, as [the government] argue[s], § 1225(b)(2)(A) were intended to apply to all 'applicants for admission,' there would be no need to include the phrase 'seeking admission' in the statute." (first quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); then quoting *Lopez Benitez v. Francis*, No. 25-CV-5837, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025))).

The broader statutory scheme also favors this interpretation. "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Tumba Huamani*, 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)). The government's reading of Section 1225(b)(2) — that all noncitizens present in the United States and subject to removal proceedings are necessarily "seeking admission" — is "entirely inconsistent" with the recent

synonyms"); *Chen*, 2025 WL 3484855, at *5 (finding that "'applying for something' ordinarily is synonymous with 'seeking something'")).) The Court respectfully disagrees with the conclusions in those cases, and adopts the rationale adopted by the overwhelming majority of courts in this circuit, and in the country.

amendment of the INA by the Laken Riley Act. *Id.* at *4. The Laken Riley Act, passed earlier this year, "makes noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions of 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed certain crimes." *Id.* (quoting *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025)). If the government's reading of Section 1225 correct — that detention is mandatory for noncitizens in immigration proceedings in the United States — it is not clear why Congress "thought it necessary to specifically add a provision making [inadmissible] noncitizens subject to mandatory detention if they are charged with certain crimes." *Id.* (collecting cases). Apart from the recent amendment, the government's interpretation of "Section 1225 would also all but read Section 1226 off the books." *Id.* (citing *Lopez Benitez*, 2025 WL 2371588, at *8). Interpreting the statutory scheme as a whole, "'[t]ogether' the sections 'cover aliens presenting at arrival (under § 1225) and then everybody else (under § 1226).'" *Id.* (quoting *J.G.O.*, 2025 WL 3040142, at *4). The Court therefore agrees with the nearly unanimous view of courts in this circuit that "the most basic interpretive canons," "context," and "overall statutory scheme" support applying Section 1226 to the petitioner's detention. *Sarmiento Guerrero*, 2025 WL 3214787, at *3.

Binding Supreme Court precedent further supports the petitioner's read of the statute. In *Jennings v. Rodriguez*, the Supreme Court analyzed Sections 1225, 1226, and 1227 to determine whether "detained aliens have a statutory right to periodic bond hearings." 583 U.S. at 285. The Court made it clear that "Section 1225 authorizes 'the Government to detain certain aliens seeking admission *into the country*,' while Section 1226 'authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings.'" *Sarmiento Guerrero*, 2025 WL 3214787, at *5 (quoting *Jennings*, 582 U.S. at 288) (emphasis in *Sarmiento*

*Guerrero*); *see also Nielsen*, 586 U.S. at 396–97 (holding that Section 1226(a) applies to noncitizens "present in this country").

The government claims that *Jennings* stands for the proposition that "[a]pplicants for admission fall into one of two categories, 'those covered by § 1225(b)(1) and those covered by § 1225(b)(2).'" (ECF No. 8 at 11 (quoting *Jennings*, 583 U.S. at 287).) The government's interpretation is not persuasive, because it takes the above language out of context. The quote upon which the government rests its theory appears in a discussion about "decid[ing] (1) who may enter the country and (2) who may stay here after entering." *Jennings*, 538 U.S. at 286. Justice Alito, writing for the majority, explained:

> That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2).

*Id.* at 287 (quoting 8 U.S.C. § 1225). Read in context, the quoted language clearly refers to the "process . . . at the Nation's borders and ports of entry." *Id.*; *see also id.* ("*As relevant here*, applicants for admission fall into one of two categories . . ." (emphasis added)). Any possible doubt about the Court's meaning is erased by the Court's summary:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289. Thus, the government's argument that all "[a]pplicants for admission fall into one of two categories" under Section 1225 is inconsistent with the broader statutory scheme and with the Supreme Court's recent, clear explanation of that statutory scheme.

Additionally, the government's own records establish that it was acting under Section 1226. The November 8, 2025 arrest warrant, which government agents prepared, cites "authori[ty] pursuant to sections 236 and 287," 8 U.S.C. §§ 1226 and 1357. (ECF No. 14-1.) Similarly, records from the petitioner's initial arrest reflect that when he was detained "at or near Tecate, California, outside of a port of entry" (ECF No. 8-1 ¶ 3; ECF No. 1-3 at 1), the detention was pursuant to Section 1226. The Notice of Custody Determination (Form I-286) and Order of Release on Recognizance (Form I-220A) indicate that the petitioner was released on recognizance "[i]n accordance with section 236 of the [INA]," 8 U.S.C. § 1226. (ECF No. 1-5 at 1; ECF No. 14-4 at 1.) Dismissing its own records as "paperwork," the government argues that it "[can]not be estopped from taking the position that the petitioner . . . was subject to detention under § 1225(b) simply because the [g]overnment previously treated him as detained pursuant to § 1226(a)." (ECF No. 8 at 27.) The government is free to argue, despite what it said before, that it is detaining the petitioner under Section 1225, but the fact that the government took precisely the opposite position is a relevant factor for the Court's consideration. The records in which it did so are additional evidence that Section 1226 applies here.

In short, the Court rejects the government's arguments as unpersuasive and concludes that Section 1225 does not apply to a noncitizen like the petitioner, who has been living in the United States while his asylum application is pending, and that his detention can only be authorized if ICE complied with 8 U.S.C. § 1226(a). The Court next addresses whether the government violated the petitioner's due process rights under that section.

## II. Denial of Due Process

### a. Constitutional Due Process Protections Apply

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citations omitted). It is well established that this protection extends to noncitizens, including those in removal proceedings. *See id.* at 693 ("[O]nce an alien enters the country, the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings" (citation omitted)). The "essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In the face of this precedent, the government cites the "entry fiction doctrine," and argues that the petitioner's "claim that his detention violates procedural due process fails because applicants for admission (such as Petitioner) have only those due process rights that Congress provided by statute" and "lack any constitutional due process rights with respect to admission aside from the rights provided by statute." (ECF No. 8 at 14–16.) The "entry fiction," the

government argues, means that applicants for admission "are treated for due process purposes as if stopped at the border." (*Id.* at 15 (quoting *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)) (cleaned up).)

The petitioner counters that cases on which the government relies are inapplicable to this case, because those applicants were "conclusively denied entry" when they arrived at the border. (ECF No. 9 at 6 (quoting *Al-Thuraya v. Warden, Orange County Correctional Facility*, No. 25-CV-2582, 2025 WL 2858422, at *5 (S.D.N.Y. Oct. 9, 2025)).)

The petitioner has the better argument. "The entry fiction is a doctrine that dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted." *J.G.O.*, 2025 WL 3040142, at *4 (citation omitted) (emphasis in original). For example, in *Mezei*, the Supreme Court emphasized that "the alien's extended departure from the United States required him to seek entry into this country once again. His presence on Ellis Island did not count as entry into the United States. Hence, he was 'treated,' for constitutional purposes, 'as if stopped at the border.'" *Zadvydas*, 533 U.S. at 693 (quoting *Mezei*, 345 U.S. at 215). By contrast, "[r]elease on your own recognizance isn't parole 'into the United States,' which permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen 'as if stopped at the border,'" *J.G.O.*, 2025 WL 3040142, at *4 (quoting *Thuraissigiam*, 591 U.S. at 139 (2020)) (citations omitted); "it 'instead releases a non-citizen already in the country from domestic detention.'" *Id.* (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)). Here, the petitioner was released on recognizance from

domestic detention, not paroled, and then arrested inside the United States (ECF No. 8-1 ¶ 3), "[a]nd that ma[kes] all the difference." *Zadvydas*, 533 U.S. at 693.

The petitioner was in this country when ICE agents arrested him without notice and transferred him to the MDC. He is therefore, like any other person in this country, entitled to due process.

**b.      Due Process Under Section 1226**

In this circuit, courts assessing the adequacy of the process afforded in the civil immigration context apply the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez*, 978 F.3d at 851. Under that test, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The petitioner argues that his "unexplained re-detention violates due process." (ECF No. 1 ¶ 24.) On this point, the government asserts only that the petitioner "was arrested pursuant to a warrant" and is not entitled to constitutional due process protections. (ECF No. 8 at 9, 14–16.)

The first *Mathews* factor — the private interest affected by the government's action — overwhelmingly favors the petitioner whose interest is "the most significant liberty interest there is — the interest in being free from imprisonment." (ECF No. 1 ¶ 25 (quoting *Artiga*, 2025 WL 2829434, at *8; *Velasco Lopez*, 978 F.3d at 851).) "A person's liberty cannot be abridged without 'adequate procedural protections.'" *Artiga*, 2025 WL 2829434, at *8 (quoting *Zadvydas*,

533 U.S. at 690). The government does not deny that it afforded the petitioner no process before agents arrested him at the "check-in" appointment — which the government directed him to attend — and detained him. It is well-established that a "parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," that "liberty [interest] is valuable and must be seen as within the protection of the [Due Process clause]" such that "its termination calls for some orderly process." *Savane v. Francis*, No. 25-CV-6666, 2025 WL 2774452, at *9 (S.D.N.Y. Sept. 28, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in *Savane*). Here, the agents released the petitioner "provided [he] comply with [certain] conditions." (ECF No. 1-5 at 1.)[11] The petitioner "report[ed] for [his November 8, 2025] hearing as directed by the Department of Homeland Security," (*id.*), in compliance with those conditions, and thus relied on the government's "implicit promise that [his release] will be revoked only if he fails to live up to [those] conditions." *Savane*, 2025 WL 2774452, at *9. Even in cases where revocation of release is discretionary, courts have held that "a noncitizen has a significant liberty interest in remaining out of custody once [release] is granted." *Id.* (collecting cases). The first *Mathews* factor thus weighs heavily in the petitioner's favor.

As for the second *Mathews* factor — the value of additional safeguards — the record demonstrates that the government has made no individualized determination to justify detaining the petitioner. The sole reason in the record — that the petitioner is "subject to be re-detained now that bedspace is available" (ECF No. 14-2 at 3) — does not justify arresting and holding the petitioner in the MDC. The government originally released the petitioner on his own recognizance pursuant to Section 1226 (ECF No. 1-5 at 1), which permits release only after "the

---

[11] The petitioner was released on his own recognizance, not paroled.

alien [ ] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Significantly, the government does not argue that the petitioner is dangerous or a flight risk; indeed, other than citing Section 1225, which as explained above does not apply, the government gives no justification at all for detaining the petitioner. "In fact, nothing in the record reflects . . . (1) who made the decision to detain him, (2) when that decision occurred, (3) on what basis the decision to detain him was made, [or] (4) whether there was any material change in circumstances with respect to [him] that triggered his detention." *Lopez Benitez*, 2025 WL 2371588, at *11. The value of additional safeguards — an individualized hearing before a neutral decisionmaker where the government has the burden of showing that the petitioner's detention is authorized under 8 U.S.C. § 1226(a) and related regulations — thus also weighs heavily in the petitioner's favor.

For the third *Mathews* factor — the government's interest — the government's interest in detaining individuals under 8 U.S.C. § 1226(a) is valid if it "advances a legitimate governmental purpose," such as "'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, No. 25-CV-4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) (quoting *Zadvydas*, 533 U.S. at 690). As discussed above, the government does not argue that the petitioner is a danger to the community or a flight risk, nor could it do so on this record. The petitioner has no criminal history and has complied with the conditions of his release on recognizance, including appearing when the government directed him to do so.

Accordingly, the Court finds that the "ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond,

violates his due process rights." *Valdez*, 2025 WL 1707737, at *4 (citing *Lopez*, 2018 WL 2932726, at *15).

**III.    Even if Section 1225 Applies, the Petitioner Was Denied Due Process**

Even if the mandatory detention provision in Section 1225 applied — and the weight of authority says that it does not — the government violated the petitioner's due process rights because it gave him no process before agents arrested him and detained him.  As discussed above, the petitioner was initially arrested and released on his own recognizance pursuant to Section 1226.  If, however, he was previously arrested and released under Section 1225, his "initial release into the United States was only legally authorized under § 1182(d)(5)(A) because that provision is the sole statutory authority under which a noncitizen subject to § 1225(b)(2)(A) may be paroled," which the government has conceded in other cases.  *Savane*, 2025 WL 2774452, at *7 (citing *Biden v. Texas*, 597 U.S. 785, 814–15 (2022) (Kavanaugh, J., concurring)).  The question is what process is required to revoke parole granted pursuant to Section 1182.

Applicants for admission, including those noncitizens who are paroled into the United States for a limited purpose, are "treated, for constitutional purposes, as if stopped at the border." *Zadvydas*, 533 U.S. at 693 (citation omitted) (cleaned up).  Accordingly, for a paroled applicant for admission, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212 (citation omitted); *see also Augustin v. Sava*, 735 F.2d 32, 36 (2d. Cir. 1984) ("Although aliens who petition for admission have no constitutional rights regarding their applications, they do have such statutory rights as Congress grants.").  The implementing regulations for Section 1182(d)(5)(A) require "written notice to the alien" prior to parole revocation.  *Savane*, 2025 WL 2774452, at *8 (quoting 8 C.F.R.

§ 212.5(e)(2)(i).  Additionally, the implementing regulations provide previously-paroled individuals with process, including:

> Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed.  If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 215.5(e)(2)(i).  There is no suggestion anywhere in the record that the petitioner "was given any prior notice — much less written notice — that he was going to be arrested following his court appearance."  *Savane*, 2025 WL 2774452, at *8 (citing *Orellana v. Francis*, No. 25-CV-4212, 2025 WL 2402780 at *6 (E.D.N.Y. Aug. 19, 2025)).  Nor has the government provided the petitioner with the process required pursuant to 8 C.F.R. § 212.5(e)(2)(i).  And, as described above, the government has made no individualized determinations as to the petitioner to justify his ongoing detention.  The Court therefore finds that even if Section 1225 applies, the government violated the petitioner's due process rights because it did not comply with the statutorily required process for revoking parole.

## IV.    Scope of Relief

Under either section of the INA, the government's detention of the petitioner in November was invalid because it denied him due process.  The "typical remedy" for "unlawful executive detention" is "of course, release."  *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it").

Here, the constitutional violation the petitioner suffered — the government's failure to conduct any kind of individualized assessment before detaining him, failure to make any

19

showing of changed circumstances, and failure to provide him with an opportunity to respond —
renders any post-deprivation review by an immigration judge inadequate. That is especially true
because "[d]etention under § 1226(a) is frequently prolonged because it continues until all
proceedings and appeals are concluded." *Velasco Lopez*, 978 F.3d at 852.

The government's ongoing detention of the petitioner, in the face of this complete failure
of process, entitles him to immediate release. Pending a final determination in his removal
proceedings, Mr. Ye will remain free of detention or any other restraint under the immigration
laws of the United States to which he was not subject upon his release on recognizance in 2023.

## CONCLUSION

For these reasons, the petitioner's detention without an individualized custody
determination violates the INA and the Due Process Clause of the Fifth Amendment, and his
petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1, is granted.

The government is directed to release the petitioner from custody within 24 hours of this
Order. The government is further directed to return to the petitioner any and all funds and/or
property — including the "$927.00 USD" — that was seized from the petitioner at the time of
arrest. (ECF No. 14-2 at 3 (listing Receipt #1493598 and Receipt #1493597).) The government
is directed to certify compliance with the Court's Order by filing a letter on the docket no later
than 10:00 p.m. on December 9, 2025. The parties are directed to file status letters regarding the
petitioner's December 9, 2025 hearing by 5:00 p.m. on December 11, 2025. The Court further
orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at
a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have
the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a). Should the
petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act,

he may do so by filing a letter application on the docket within thirty days of this Order. The

Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the

case.


**SO ORDERED.**

                                           _____s/Ann M. Donnelly_____
                                           ANN M. DONNELLY
                                           United States District Judge


Dated: Brooklyn, New York
        December 8, 2025